1   Cliff Palefsky, Esq. (State Bar #77683)
    cp@mhpsf.com
2   Keith Ehrman, Esq. (State Bar #106985)
    kaemhp@aol.com
3   McGuinn, Hillsman & Palefsky
    535 Pacific Avenue
4   San Francisco, California 94133
    Telephone:    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
5   Facsimile:    415-403-0202

6   Attorneys for Plaintiff
    TAYLER BAYER
7

8                   UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11                   SAN FRANCISCO DIVISION

12

13   TAYLER BAYER,                )   CASE NO. 11-CV-03705-MEJ
                             )
14             Plaintiff,        )   **PLAINTIFF TAYLER BAYER'S**
                             )   **OPPOSITION TO DEFENDANTS' MOTION**
15                              )   **TO COMPEL ARBITRATION AND**
    vs.                           )   **DISMISS, OR IN THE ALTERNATIVE,**
16                              )   **STAY ACTION**
    THE NEIMAN MARCUS GROUP, INC.   )
17                              )
            Defendant.      )   Date:   October 27, 2011
18                              )   Time:   10:00 a.m.
19                              )   Dept:   Courtroom B,
                             )         Honorable Maria-Elena James
20                              )

21

22

23

24

25

26

27

28

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................... 2

III.    LEGAL ARGUMENT .............................................................................. 5

        A.      BAYER NEVER ENTERED INTO AN AGREEMENT ........................ 5
                TO ARBITRATE

                1.      There is No Contractual Agreement To Arbitrate, Since ............... 5
                        Bayer Specifically Rejected Neiman's Proposed
                        Arbitration Agreement

                2.      The Fact that Bayer Continued Working Cannot Constitute ........... 9
                        "Implied Consent" in Light of His Other Expressions and
                        Actions in Explicitly Rejecting the Agreement

        B.      NEIMAN'S ARBITRATION AGREEMENT IS UNCONSCION- ......... 13
                ABLE AND UNENFORCEABLE

                1.      The Court and Not the Arbitrator Decides Unconscionability ...... 14

                2.      The Neiman Arbitration Agreement is Unconscionable and ....... 16
                        Unenforceable

CONCLUSION .................................................................................................. 25

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

4   *AT & T v. Concepcion*
        (2011) 131 S. Ct. 1740, 179 L. Ed. 2d 742.................................................................23

5
    *Cedars Sinai v. Mid-West,*
6       118 F. Supp. 2d 1002 (C.D.Cal. 2000) ........................................................................8

7   *Chicago Teachers Union v. Hudson (1086),*
8       475 U.S. 292 ...............................................................................................................20

9   *Circuit City v. Adams*
        (9th Cir. 2002) 279 F.3d 889 .....................................................................................18
10
    *Circuit City v. Adams,*
11      279 F.3d 889 (9th Cir. 2002) .......................................................................................7

12  *Circuit City v. Mantor*
13      (9th Cir. 2003) 335 F.3d 1101 ...................................................................................18

14  *Circuit City v. Mantor,*
15      335 F.3d 1101 (9th Cir. 2003) ...............................................................................7, 22

16  *Davis v. O'Melveny,*
        485 F.3d 1066 (9th Cir. 2007) ...................................................................................18
17
    *Digital Software v. Entertainment Programs,*
18      2010 U.S. Dist. LEXIS 17202 (E.D.Cal. 2010) ....................................................6, 7, 8

19  *Doctors Associates v. Casarotto*
20      (1996) 517 U.S. 681, 116 S. Ct. 1652 .......................................................................14

21  *Ferguson v. Countrywide*
        (9th Cir. 2002) 298 F.3d 778 ................................................................................19, 21
22
    *First Options of Chicago v. Kaplan*
23      (1995) 514 U.S. 938, 115 S. Ct. 1920 .........................................................................7

24  *Gilmer v. Interstate/Johnson Lane*
25      (1991) 500 U.S. 26, 111 S. Ct. 1647 ..........................................................................18

26  *Goldsmith v. Bagby Elevator,*
27      513 F.3d 1261 (11th Cir. 2008) ..................................................................................10

28

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ
OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

*Graham Oil v. ARCO*
        (9th Cir. 1994) 43 F.3d 1244 ...................................................................................18

*Granite Rock v. Int'l Board*
        (2010) 130 S. Ct. 2847, 177 L. Ed. 2d 567 .............................................................6

*HCC Life Insurance v. Managed Benefit,*
        2008 U.S. Dist. LEXIS 46443 (E.D.Cal. 2008) .................................................7, 8

*Harco Trucking*
        (2005) 344 N.L.R.B. 478 .......................................................................................23

*Hooter's v. Phillips ,*
        173 F.3d 933 (4th Cir. 1999) ................................................................................20

*In re Dallas Peterbilt*
        (2006) 196 S.W.3d 161 .........................................................................................11

*Ingle v. Circuit City,*
        328 F.3d 1165 (9th Cir. 2003) ..........................................................6, 18, 21, 22, 26

*Laguna v. Coverall,*
        2011 U.S. Dist. LEXIS 81105 (S.D.Cal.2011)......................................................14

*Lloyd's v. Westchester,*
        489 F.3d 580 (3d Cir. 2007) ....................................................................................6

*McMullen v. Meijer*
        (6th Cir. 2004) 355 F.3d 485 .................................................................................20

*Mitsubishi Motors v. Soler*
        (1985) 473 U.S. 614, 105 S. Ct. 3346 .....................................................................6

*Murphy v. Check 'N Go, supr ; Chen-Oster v. Goldman Sachs,*
        2011 U.S. Dist. LEXIS 46994 (S.D.N.Y. 2011) .............................................15, 22

*Murray v. United Commercial Food Workers*
        (4th Cir. 2002) 289 F.3d 297 .................................................................................20

*Davis v. O'Melveny*
        (9th Cir. 2007) 485 F.3d 1066 ...............................................................................21

*Nelson v. Cypress Bagdad,*
        119 F.3d 756 (9th Cir. 1997) ..................................................................................13

iii

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ
OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

*Perez v. Maid Brigade,*
     2007 U.S. Dist. LEXIS 78412 (N.D.Cal. 2007)............................................................7

*Quilloin v. Tenet Healthsystem,*
     763 F. Supp. 2d 707 (E.D.Pa. 2011)..........................................................................14

*Rent-a-Center West v. Jackson*
     (2010) 130 S.Ct. 2772 ..........................................................................6, 7, 14, 16

*Robinson v. Shell*
     (1997) 519 U.S. 337, 117 S. Ct. 843 ..........................................................................19

*Sager v. Harborside,*
     2011 U.S. Dist. LEXIS 72742 (D.Conn.)......................................................................7

*Steelworkers v. Warrior & Gulf*
     (1960) 363 U.S. 574, 80 S. Ct. 1347 ............................................................................6

*Telenor Mobile v. Storm,*
     584 F.3d 396 (2d Cir. 2009)........................................................................................6

*Ting v. AT & T*
     (9th Cir. 2003) 319 F.3d 1126 ..................................................................................22

*Trinity Trucking*
     (1975) 221 N.L.R.B. 364............................................................................................23

*United v. AT & T,*
     298 F.3d 756 (9th Cir. 2002)........................................................................................6

*Volt v. Board of Trustees*
     (1989) 489 U.S. 468, 109 S. Ct.1248 ..........................................................................6

*Will-Drill v. Samson,*
     352 F.3d 211 (5th Cir. 2003)....................................................................................7, 8

## STATE CASES

*Armendariz v. Foundation Health Pyschcare Services*
     (2000) 24 Cal. 4th 83....................................................17, 18, 19, 20, 21, 25

*Asmus v. Pacific Bell*
     (2000) 23 Cal. 4th 1..........................................................................................11, 12

*Baker v. Osborne*
     (2008) 159 C.A.4th 884................................................................................................16

iv

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

*Banner v. Superior Court*
    (1998) 62 C.A.4th 348, 356..................................................................7

*Benasra v. Marciano*
    (2001) 92 C.A.4th 987, 990..................................................................6

*Binder v. Aetna*
    (1999) 75 C.A.4th 832, 850..................................................................8

*Brown v. Ralph's Grocery*
    (2011 197 C.A.4th 189......................................................................24

*Brant v. Calif. Dairies*
    (1935) 4 Cal. 2d 128.........................................................................8

*Bruni v. Didion*
    (2008) 160 C.A.4th 1272, 1291............................................................6

*Cheng-Canindin v. Renaissance Hotel*
    (1996) 50 C.A.4th 676, 687................................................................20

*Craig v. Brown & Root*
    (2000) 84 C.A.4th 416......................................................................10

*DiGiacinto v. Ameriko*-Omserv
    (1997) 59 C.A.4th 629......................................................................12

*Dream Theatre v. Dream Theater*
    (2004) 124 C.A.4th 629....................................................................14

*Fitz v. NCR*
    (2004) 118 C.A.4th 702.................................................................17, 21

*Gentry v. Superior Court*
    (2007) 42 Cal.4th 443..........................................................18, 22, 24, 26

*Graham v. Scissor-Tail*
    (1981) 28 Cal. 3d 807.......................................................................20

*Hartley v. Superior Court*
    (2011) 196 C.A.4th 1249...................................................................16

*Keating v. Superior Court*
    (1982) 31 Cal. 3d 584.....................................................................7, 22

v

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ
OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

*Kinney v. United Healthcare*
      (1999) 70 C.A.4th 1322 ............................................................................7, 21

*Lachi Delisa v. CH2M Hill*
      (2001) 26 Cal. 4th 798 ..............................................................................18

*Little v. Auto Stiegler*
      (2003) 29 Cal. 4th 1064 .............................................................................25

*Lopez v. Charles Schwab*
      (2004) 118 C.A.4th 1224, 1229 ...............................................................6, 8

*McCaskey v. CSAA*
      (2010) 189 Cal. App. 4th 947 ...................................................................13

*Mitri v. Arnel Management*
      (2007) 57 C.A.4th 1164, 1169 ...........................................................6, 7, 13

*Murphy, v. Check 'N Go, Go*
      (2007) 156 C.A.4th 138 ..................................................................14, 15, 16, 22

*Ontiveros v. DHL*
      (2008) 164 C.A.4th 494 .......................................................................14, 15

*Mercuro v. Superior Court*
      (2002) 96 C.A.4th 167, 178 .......................................................7, 13, 15, 18, 20, 25

*Parada v. Superior Court*
      (2009) 176 C.A.4th 1554 ...........................................................................16

*Romo v. Y-3 Holdings*
      (2001) 87 Cal. App. 4th 1153 ....................................................................13

*Rosenthal v. Great Western*
      (1996) 14 Cal. 4th 394 ................................................................................7

*Stirlen v. Supercuts*
      (1997) 51 C.A.4th 1519, 1531 ....................................................................17

*Wheeler v. St. Joseph*
      (1976) 63 C.A.3d 345, 356 ...........................................................................8

*Wherry v. Award, Inc.*
      (2011) 192 C.A.4th 1242 ......................................................................18, 25

vi

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

1

## FEDERAL STATUTES

9 U.S.C. Section 4 ...................................................................................................9

29 U.S.C. Sec. 216(b) ...........................................................................................23

29 U.S.C. Sec. 255(a) ...........................................................................................19

29 U.S.C. Sec. 2617(a)(2) .....................................................................................23

29 U.S.C. Sec. 2926(b) ..........................................................................................23

29 U.S.C. Section 12203(b) ....................................................................................4

29 U.S.C. Sec. 206(d), 216(b) ...............................................................................22

29 U.S.C. Sec. 201, 216(b) ....................................................................................22

29 U.S.C. Sec. 2601, 2617(a)(2) ...........................................................................22

29 U.S.C. Section 157 ...........................................................................................23

29 U.S.C. Sec. 621, 626(b) ....................................................................................22

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ
OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.   **INTRODUCTION**

Plaintiff Tayler Bayer filed a Complaint against his former employer, Defendant Neiman Marcus ("Neiman"), alleging violations of the Americans with Disabilities Act ("ADA") in connection with his termination.  Neiman has now filed a Motion to Compel Arbitration. Neiman's Motion is baseless for several reasons.

First, Bayer is simply not a party to an "agreement to arbitrate".  When Neiman tried to impose an arbitration policy on its employees in 2007 under a threat of termination, Bayer expressly *refused* to become a party to the arbitration agreement; *refused* to sign the arbitration agreement form; and repeatedly told Neiman both orally and in writing that he would *not* agree or consent to Neiman's arbitration program.  Bayer even filed legal actions against Neiman regarding the illegality of Neiman trying to coerce him into its arbitration program under a threat of termination.

Arbitration is a matter of consent, and a court's first duty in a motion to compel arbitration is to determine whether, under basic contract principles, the parties even entered into an agreement to arbitrate.  Since Bayer explicitly *rejected* Neiman's proposed arbitration program and refused to "accept" it, Neiman's motion to compel is completely baseless.

Second, even if Neiman *could* have shown that Bayer had "consented" to Neiman's arbitration program, Neiman's arbitration policy is unconscionable and violates public policy, and so is unenforceable.  Neiman's arbitration program has numerous provisions which contravene the minimum requirements established by law for employer-mandated arbitration agreements.  Neiman made no effort to create a "neutral" arbitration program.  Instead, virtually every provision in Neiman's arbitration policy was drafted in a manner designed to gain some perceived advantage for Neiman over the employee.   Indeed, both the EEOC and the NLRB have demanded that various provisions in Neiman's arbitration program be changed or removed.

A glaring example of Neiman's grossly one-sided arbitration system is how it would impact the very claim Bayer has filed in this federal court lawsuit. Bayer's claim is for unlawful discrimination and retaliation arising out of his January 2009 termination by Neiman.  Bayer

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

1

timely filed a claim with the EEOC in August 2009, but did not receive his "right-to-sue" letter from the EEOC until April 2011, as the EEOC investigated his charges for nearly two years.

Under Neiman's arbitration policy—which requires an employee to file an arbitration claim against Neiman within one year of the employee's termination, but which prohibits the employee from filing his arbitration claim until he has exhausted his administrative remedies with the EEOC—Bayer would be *barred* from bringing this claim. Bayer could not have filed an arbitration claim against Neiman within the "one year" window, since he did not yet have his right to sue letter from the EEOC. Thus, if the Court were to grant Neiman's Motion to Compel Arbitration, Bayer would not be permitted to proceed with this claim in arbitration! Neiman would show the arbitrator that Bayer's claim was "untimely" and so must be dismissed, since it was filed more than one year after Bayer's termination. This is the "justice system" which Neiman created with its arbitration program. It is little wonder that Bayer refused to agree to become a party to it.

## II.   **FACTUAL BACKGROUND**

Bayer, a California resident, began employment with Neiman in San Francisco in March 2006. Neiman employees who work 30 hours per week were deemed "full time" and received benefits, including health insurance. Prior to March 2007, Bayer worked 30 hours per week (5 six- hour shifts) and so received benefits. Bayer Dec., Pars. 2, 3.

Between March and June 1, 2007, Bayer was on medical leave due to serious respiratory problems. Bayer's doctor authorized him to return to work in June 2007, but restricted him to no more than 4 work days per week. Bayer therefore asked Neiman for a slight modification to his work schedule (4 eight hour shifts) so that he could maintain 30 hours and continue to receive health insurance. Incredibly, Neiman refused to accommodate Bayer and would not let him work more than 3 days per week (24 hours total), which disqualified Bayer from receiving the health insurance he needed. Bayer Dec., Pars. 4, 5.

Neiman's refusal to provide reasonable accommodation for Bayer's medical condition was illegal under the ADA. In June 2007, Bayer filed a complaint with the Equal Employment

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

2

Opportunity Commission ("EEOC"), alleging that Neiman had discriminated against him on the basis of his medical condition/disability, and had failed to accommodate him. Bayer intended to file a lawsuit in federal court against Neiman for violation of the ADA, after he received a right to sue letter. Bayer Dec., Pars. 6, 7; Ex. A.

On June 20, 2007, Bayer received Neiman's Arbitration Agreement and accompanying Arbitration Form. Bayer Dec., Exhs. B, C. Bayer was told that he was required to sign the Arbitration Form prior to July 15th and consent to Neiman's new arbitration policy. The Arbitration Agreement stated that it was not optional. This was confirmed by two of Bayer's supervisors, who told Bayer that he would be *terminated* if he did not sign the Arbitration Form and agree to Neiman's new arbitration policy. In the weeks preceding July 15th, Bayer was told several more times by his supervisors that he had to sign the Arbitration Form, and that if he did not sign it, he would not have a job with Neiman after July 14, 2007. Bayer Dec., Pars. 8—12.

Bayer was very troubled by the Arbitration Agreement, since it took away many of his rights, including his right to a jury trial and his right to bring a claim in court. Bayer was very upset that he was being threatened with termination if he did not sign the Arbitration Form and agree to Neiman's arbitration program. This coercion was especially troubling since Bayer had a claim pending against Neiman with the EEOC and he intended to soon bring an ADA claim in federal court. Bayer Dec., Par. 9.

In the weeks prior to July 15, 2007, as his supervisors badgered Bayer to sign the Arbitration Form, Bayer told his supervisors on three separate occasions that he would ***not*** sign the Arbitration Form, that he would ***not*** agree to Neiman's arbitration program, and that he would ***not*** agree to be bound by the Arbitration Agreement. Bayer also made it clear to his supervisors that he intended to continue working at Neiman after July 15th. Indeed, Bayer needed his job and the chance to receive health insurance. Bayer Dec., Pars. 11—14.

On July 9, 2007, after retaining an attorney, Bayer filed a *second* charge with the EEOC, in which he asserted that Neiman's conduct in trying to coerce him into accepting this Arbitration

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

3

Agreement, upon a threat of termination, was illegal under the ADA.[1] Bayer Dec., Par. 14, Ex. E. On July 10, 2007, Bayer wrote a letter to Neiman stating that he was going to continue working at Neiman, but that he was refusing to sign the Arbitration Form, that he was refusing to be bound by the Arbitration Agreement, and that he would not agree to Neiman's arbitration program. Bayer Dec., Par. 15, Ex. F. The letter also stated that the Arbitration Agreement was illegal. Bayer delivered three copies of this letter to Neiman.

On July 15, 2007, Bayer showed up to work. Although he was expecting to be terminated that day, nothing happened, and no Neiman employee ever said anything further to him about the Arbitration Agreement.[2] On July 19, 2007, Bayer filed yet another charge against Neiman concerning the illegality of the Arbitration Agreement, this time with the National Labor Relations Board. Bayer Dec., Pars. 16, 17, Ex. G.

In early November 2007, Neiman gave its employees a new policy regarding internet use. Neiman asked Bayer to sign a form acknowledging his agreement to abide by that policy and "other" Neiman policies. Bayer refused to sign the form because he wanted there to be no doubt that he was not agreeing to Neiman's arbitration policy. Bayer also informed one of his managers in November 2007 that he was refusing to sign the form due to his stance regarding Neiman's arbitration policy. At the same time (early November 2007), Bayer sent another copy of his July 10, 2007 letter to Neiman's Human Resources Department, to emphasize his ongoing refusal to be a party to Neiman's arbitration program. Bayer Dec., Par. 19; Ex. F.

Later in November 2007, Bayer received a new Neiman employee handbook, which had an "Acknowledgment Form" attached which Neiman wanted Bayer to sign. Bayer Dec., Ex. I.

---

[1] Specifically, Neiman's conduct was a violation of 29 U.S.C. Section 12203(b), which prohibits anyone from attempting to "coerce, threaten, intimidate or interfere with" any individual in the exercise or enjoyment of rights granted or protected by the ADA. Since Neiman was attempting to coerce Bayer into giving up rights granted by the ADA (including the right to a jury trial and a right to bring an ADA claim in federal court) Neiman's threats were illegal. Bayer's July 9, 2007 EEOC Charge also asserted that the Arbitration Agreement itself was illegal and unconscionable. Bayer Dec., Ex. E.

[2] Neiman likely took no action against Bayer out of concern that firing Bayer right after he had filed several EEOC charges would expose Neiman to a new claim for illegal retaliation.

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

4

The handbook had a section referring to Neiman's arbitration program, while the Acknowledgment Form specifically discussed Neiman's arbitration program and indicated that by signing the Acknowledgment Form, Bayer was agreeing that he was accepting Neiman's arbitration program. Bayer refused to sign the Acknowledgment Form, as he wanted to again make clear that he would *not* agree to be a party to Neiman's arbitration program. Bayer also drafted a new letter which he gave to Neiman on November 28, 2007. Bayer Dec., Ex. J. In this letter, Bayer explained why he was refusing to sign the Acknowledgment Form, and he reiterated that he had previously rejected, and continued to reject, Neiman's arbitration program, and would not agree to it. Bayer Dec., Par. 20.

In September 2008, Bayer received another employee handbook, accompanied by another "Acknowledgment Form". Once again, the 2008 handbook described the arbitration program, while the Acknowledgment Form discussed Neiman's arbitration program and indicated that by signing the Form, the employee agreed that he was accepting Neiman's arbitration program. Once again, Bayer refused to sign the Acknowledgment Form. Bayer Dec., Par. 22, Ex. K.

In retaliation for Bayer's repeated legal challenges, Neiman terminated Bayer's employment in January 2009. In August 2009, Bayer filed a charge of discrimination and retaliation with the EEOC arising out of his termination. The EEOC investigated this charge at length, and did not issue Bayer a right to sue letter until April 2011. Palefsky Dec., Par. 2; Ex. A. In July 2011, Bayer filed this lawsuit in federal court, alleging discrimination and retaliation in connection with his January 2009 termination. Bayer Dec., Pars. 23, 24.

### III. LEGAL ARGUMENT

### A. BAYER NEVER ENTERED INTO AN AGREEMENT TO ARBITRATE

#### 1. There is No Contractual Agreement To Arbitrate, Since Bayer Specifically Rejected Neiman's Proposed Arbitration Agreement

The Courts have repeatedly said that, "arbitration is a matter of consent, not coercion". *Volt v. Board of Trustees* (1989) 489 U.S. 468, 479, 109 S.Ct.1248; *Stolt-Nielsen v. Animal Feeds* (2010) 130 S.Ct. 1758, 176 L.Ed.2d 605; *Ingle v. Circuit City,* 328 F.3d 1165, 1170 (9th

5

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

Cir. 2003). Arbitration is a matter of contract between the parties, and no person can be required to submit to arbitration unless he actually entered into a contract to arbitrate.[3] If Bayer did not agree to enter into a contract to arbitrate with Neiman, i.e., if he did not accept Neiman's offer to enter into an arbitration agreement, Neiman's motion fails at the outset.

Indeed, when presented with a Motion to Compel Arbitration, a court's first task is to determine whether there even is an agreement to arbitrate.[4] This is a task for the <u>court</u>, not for the arbitrator.[5] In fact, any other position would be illogical, since a matter cannot be referred to an arbitrator to determine *anything* until the court has determined that the parties actually entered into an arbitration agreement in the first place.[6]

---

[3] *Steelworkers v. Warrior & Gulf* (1960) 363 U.S. 574, 582, 80 S.Ct. 1347; *Digital Software v. Entertainment Programs,* 2010 U.S. Dist.Lexis 17202 (E.D.Cal. 2010) (right to arbitration depends on the existence of an agreement to arbitrate, and a party cannot be forced to arbitrate in the absence of such an agreement); *Benasra v. Marciano* (2001) 92 C.A.4th 987, 990; *Lopez v. Charles Schwab* (118 C.A.4th 1224, 1229 (2004).

[4]  See, *Granite Rock v. Int'l Board* (2010) 130 S.Ct. 2847, 2855, 177 L.Ed.2d 567 (court must satisfy itself at the outset that an agreement to arbitrate exists; where dispute at issue concerns contract formation, the dispute is for courts to decide); *Mitsubishi Motors v. Soler* (1985) 473 U.S. 614, 626, 105 S.Ct. 3346 (first task of a court is to determine whether the parties agreed to arbitrate that dispute); *Telenor Mobile v. Storm,* 584 F.3d 396, 406, n.5 (2d Cir. 2009) (where the parties dispute that an agreement was ever reached, the court must decide that question as an initial matter); *Mitri v. Arnel,* (2007) 57 C.A.4th 1164, 1169;  *United v. AT & T,* 298 F.3d 756, 766 (9th Cir. 2002).

[5]  Despite Neiman's assertion that the issue of "arbitrability" has been delegated to the arbitrator in the Neiman arbitration policy, the threshold issue of whether the parties even entered into an agreement to arbitrate is for the *court.* See, *Bruni v. Didion* (2008) 160 C.A.4th 1272, 1291 (if a party claims that it never agreed to the arbitration provision at all, it is up to the court to decide that claim even if the agreement appears to delegate all "arbitrability" decisions to the arbitrator; "whatever may be the case with respect to claims of unconscionability in general, here plaintiffs are asserting that they never actually agreed to the arbitration provisions. They cannot be required to arbitrate *anything*----not even arbitrability—until a court has made a threshold determination that they did, in fact, agree to arbitrate *something*.") (emphasis in original); see also, *Lloyd's v. Westchester,* 489 F.3d 580, 585 (3d Cir. 2007) (when there is a question regarding whether the parties should be arbitrating at all, such as a dispute over whether the parties are even bound by an arbitration document, this is for the court to decide).

[6]  *Will-Drill v. Samson,* 352 F.3d 211, 218 (5th Cir. 2003) (where the very existence of any agreement is disputed, it is for the courts to decide at the outset whether an agreement was

*Bayer v. Neiman Marcus,* Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

Whether a contract exists is a question of fact. *Bustamante v. Intuit* (2006) 141 C.A.4[th] 199. The Court applies ordinary state law principles that govern the formation and interpretation of contracts in order to determine whether the parties have agreed to arbitration.[7] The burden of proof is on Neiman, as the petitioner, to show that there was an agreement to arbitrate entered into by Bayer.[8] And, contrary to Neiman's assertion, there is no "public policy" in favor of finding that the parties entered into an arbitration agreement.[9]

---

reached, applying state law contract principles; where a party attacks the very existence of the agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute; ordering arbitration could result in an arbitrator deciding that no agreement was ever formed, and such an outcome would be a statement that the arbitrator never had any authority to decide the issue); *Rosenthal v. Great Western* (1996) 14 Cal.4[th] 394, 414; *Marcus v. Hock* (1998) 68 C.A.4[th] 83, 88. This is also consistent with *Rent-a-Center West v. Jackson* (2010) 130 S.Ct. 2772, 177 L.Ed.2d 403, where the Court noted that the issue of the agreement's "validity" is different from the issue of whether any agreement between the parties was ever concluded. 130 S.Ct. at 2778, n. 2. See, *Sager v. Harborside*, 2011 U.S.Dist. Lexis 72742 (D.Conn.) (plaintiff claims she never signed the arbitration agreement and so never entered into an arbitration agreement; citing *Rent-a-Center,* court rejects defendant's argument that arbitrator must decide this issue based on delegation provision of agreement; court must decide this issue).

[7]   *First Options of Chicago v. Kaplan* (1995) 514 U.S. 938, 115 S.Ct. 1920; *Kinney v. United* (1999) 70 C.A.4[th] 1322 (existence of valid agreement to arbitrate is determined by state law principles regarding formation and enforceability of contracts generally); *Digital Software v. Entertainment Programs,* 2010 U.S. Dist.Lexis 17202 (E.D.Cal. 2010) (California laws governs whether an arbitration agreement has been formed in the first instance); *Mitri v. Arnel* (2007) 157 C.A.4[th] 1164, 1170 (California contract law applies to determine whether the parties formed a valid agreement to arbitrate). Since Bayer was a California resident and California employee, and would have entered into this purported "contract" in California, California contract law governs the determination of whether a valid contract was formed. *Circuit City v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002); *Circuit City v. Mantor,* 335 F.3d 1101, 1105 (9th Cir. 2003); *Perez v. Maid Brigade*, 2007 U.S. Dist.Lexis 78412 (N.D.Cal. 2007).

[8]   *Rosenthal v. Great Western* (1996) 14 Cal.4[th] 394, 413 (party seeking to compel arbitration has burden of proving existence of a valid agreement to arbitrate which covers the dispute at hand); *HCC Life Ins. v. Managed Benefit,* 2008 U.S. Dist.Lexis 46443 (E.D.Cal. 2008) 1169 (because existence of an arbitration agreement is a statutory prerequisite to granting a petition to compel, petitioner bears the burden of proving its existence); *Banner v. Superior Court* (1998) 62 C.A.4[th] 348, 356; *Digital Software v. Entertainment Programs,* 2010 U.S. Dist.Lexis 17202 (E.D.Cal. 2010).

[9]   Any purported "policy" in favor of arbitration does not come into play until *after* the court determines that an arbitration agreement exists. The court's initial determination as to the existence of an arbitration contract is made on basic state law contract formation principles, and

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

Under California law, a contract requires both an offer and acceptance, and the acceptance must be absolute and unqualified. See, 1 Witkin, Summary of Cal. Law, Contracts, Sections 117, 183, 185; Civil Code Sec.1585. Indeed, an essential element of any contract is "mutual assent", i.e., the consent of both parties. Civil Code Sec.1550; *Lopez v. Charles Schwab* (2004) 118 C.A.4[th] 1224, 1230. And, consent is not mutual unless the parties all agree upon the same thing, in the same sense. Civil Code Sec. 1580.

The existence of mutual consent is determined by objective criteria, the test being what the parties' "outward manifestations or expressions" would lead a reasonable person to believe. 1 Witkin, Summary of Cal. Law, Contracts, Sec. 116; *Binder v. Aetna* (1999) 75 C.A.4[th] 832, 850; *Cedars Sinai v. Mid-West*, 118 F.Supp.2d 1002, 1008 (C.D.Cal. 2000). Thus, in determining whether the parties entered into a contract, the court's goal is to look at the intent of both sides as evidenced by their *objective manifestations*, i.e., did they appear to *intend* to enter into a contract. *Brant v. Calif. Dairies* (1935) 4 Cal.2d 128; Civil Code Sec. 1565.

Here, there is no plausible basis to conclude that Bayer expressed an intention to "accept" Neiman's proposed arbitration terms, or that Bayer's "outward manifestations and expressions" would lead a reasonable person to believe that he was agreeing to be a party to Neiman's arbitration program. To the contrary, both before and after July 15, 2007, Bayer specifically and explicitly and repeatedly ***rejected and refused*** Neiman's arbitration policy. As described in Bayer's Declaration, on four different occasions between July 2007 and September 2008, Bayer refused to sign arbitration-related forms given to him by Neiman. At least four times, Bayer told his supervisors that he was refusing to agree to, or be bound by, Neiman's arbitration program

---

there is no "policy" in favor of finding that an arbitration contract exists. See, *Lopez v. Charles Schwab* (2004) 118 C.A.4[th] 1224, 1229 (policy in favor of arbitration does not come into effect until a court has concluded that under state contract law, the parties entered into an agreement to arbitrate; there is no public policy favoring arbitration in disputes which the parties have not agreed to arbitrate); *Will-Drill v. Samson*, 352 F.3d 211, 214 (5th Cir. 2003) (regardless of the policy in favor of arbitration, "the policy does not apply to the initial determination whether there is a valid agreement to arbitrate"); *Wheeler v. St. Joseph* (1976) 63 C.A.3d 345, 356; *HCC Life Ins. v. Managed Benefit*, 2008 U.S. Dist.Lexis 46443 (E.D.Cal. 2008).

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

and that he was refusing to sign any arbitration documents.  Bayer delivered two different letters to Neiman which explained why he was refusing to sign any arbitration forms and why he was refusing to be a party to, or agree to, Neiman's Arbitration Agreement.  Bayer also filed a charge with the EEOC, claiming that Neiman's conduct in even *trying* to coerce him to enter into an arbitration agreement was illegal under the ADA, and he filed multiple charges with the EEOC and the NLRB, alleging that Neiman's arbitration program was illegal and unconscionable.

Obviously, these "outward manifestations and expressions" by Bayer would lead a reasonable person to conclude that Bayer was **not** accepting or consenting to become a party to Neiman's proposed arbitration program, and that Bayer was **not** expressing any "intention" to enter into an arbitration contract with Neiman.[10]

### 2.   The Fact that Bayer Continued Working Cannot Constitute "Implied Consent" in Light of His Other Expressions and Actions in Explicitly Rejecting the Agreement

Defendant's argument for finding a contract here is that Bayer "continued working" at Neiman after July 15, 2007, and that the arbitration document said that if an employee continued to work past that date, Neiman would consider him to have consented to the arbitration program. Neiman's reliance on the idea of "silent consent" is completely undermined by the fact that Bayer refused to sign the arbitration document and *explicitly* and *repeatedly* informed Neiman-- both before and after July 15th--that he was rejecting the arbitration program, was not consenting to it, was not agreeing to it, and was not bound by it.[11]

---

[10]  If the Court believes that there are disputed facts which create any doubt in the Court's mind about the issue of contract formation, then Plaintiff requests a jury trial on this issue, pursuant to 9 U.S.C. Section 4. "If the making of the arbitration agreement…be in issue, the court shall proceed summarily to the trial thereof.  If no jury trial is demanded by the party alleged to be in default…the court shall hear and determine such issue.  Where such an issue is raised, the party alleged to be in default may…demand a jury trial of such issue." 9 U.S.C. Sec. 4.

[11]  Once Bayer rejected Neiman's arbitration policy and refused to give his consent, Neiman had the option of terminating Bayer.  But it chose not to do so--probably out of concern that the EEOC would deem such a termination to be illegal retaliation against an employee who had just filed two EEOC charges against Neiman.  Furthermore, it is illegal to terminate an employee for refusing to sign an arbitration agreement which seeks to "retroactively" force arbitration onto claims which the employee already has pending.  See, *Goldsmith v. Bagby Elevator,* 513 F.3d 1261 (11th Cir. 2008).

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

9

Neiman's argument is further undermined by the fact that Neiman itself clearly indicated that "silent consent" was not sufficient.  To the contrary, Neiman repeatedly demanded that Bayer <u>sign</u> the Arbitration Form, which acknowledged the arbitration program and the employee's agreement to it.  Neiman repeatedly threatened Bayer that unless he signed the Arbitration Form, he would be fired.   If Neiman truly believed that an employee who remained with the company after July 15, 2007 had automatically "consented" to the arbitration program, it would not have been so adamant about demanding that Bayer sign the Arbitration Form.[12]

Neiman also points to several cases and argues that an employee who is informed of "new" employment terms and who continues to show up for work may be deemed to have "accepted" those new terms.  Under certain special circumstances, that may sometimes be true.  But none of the four cases cited by Defendant supports Neiman's position here.  Most fundamentally, in none of those cases did the employee express his refusal of the new terms, explicitly reject the new terms, or state that he was not agreeing to them.

Only two of the four cases even involve arbitration agreements.  In *Craig v. Brown & Root* (2000) 84 C.A.4[th] 416, when the employer twice presented its new arbitration policy to the plaintiff and all other employees, the plaintiff said nothing suggesting that he had any objection or that he refused to agree.  He was completely *silent* and continued working until 1997 when he was terminated.  The court found it permissible to "imply" from these circumstances that the employee had consented to the new arbitration policy.  In fact, the employee's only defense was

---

[12]   Neiman notes that, in the Complaint, Bayer says that Neiman has contended that Bayer was bound to the arbitration policy on account of Bayer's showing up for work after July 15, 2007.  This is not an "admission" by Bayer.  It is simply a statement of Neiman's legal position in this lawsuit.  In fact, since Bayer delivered his July 10, 2007 letter to Neiman, no Neiman employee has ever suggested to Bayer that he or she believed that Bayer was bound by Neiman's arbitration program.  Bayer Dec., Par. 23.  Nevertheless, Bayer understands that Neiman's lawyers have taken a different stance in litigation.

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

that he claimed that he "never received" the written policy, which the Court found to be untrue.

In *In re Dallas Peterbilt* (2006) 196 S.W.3d 161, a new employee was given a copy of the company's arbitration policy and an arbitration acknowledgment form to sign. The employee said nothing and signed the arbitration acknowledgment form. The combination of receiving the policy, signing the form, making no objection, and then commencing work, was sufficient for the Court to find that the employee had impliedly consented to be bound by the arbitration policy. Once again, the employee's only defense was that he "never received" the policy---a position disbelieved by the Court in light of the fact that he had signed the acknowledgment form.

The other two cases cited by Neiman do not even involve arbitration agreements. In *Asmus v. Pacific Bell* (2000) 23 Cal.4[th] 1, a company changed its longstanding policy which had guaranteed employees "re-assignments" (rather than termination) if their jobs were eliminated. The company gave its employees 6 months notice that it would be changing this policy and, to compensate for the change, the company gave larger pension benefits to employees who stayed, in addition to large severance payments to terminated employees. The plaintiffs signed acknowledgments of the new policy, and there was no evidence that they had *ever* objected or refused to go along with the new policy. After several years of working under the new policy and collecting the increased benefits, the plaintiffs were terminated. They sued, claiming that the company did not have the right to change the policy years earlier. Under these facts, the Court found that they had consented to the new policy, as they were given 6 months notice, had signed acknowledgments of the new policy, and had never 'refused' to participate in the new plan, but rather had accepted the increased pension benefits and continued working.[13]

Finally, Neiman cites *DiGiacinto v. Ameriko*-Omserv (1997) 59 C.A.4[th] 629, which again

---

[13] The Court in *Asmus* also noted that, "whether employment policies create unilateral contracts through continued employment is a factual question in each case." 23 Cal.4[th] at 11.

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

had nothing to do with arbitration agreements.  In *DiGiacinto*, the employer informed the

employees in writing that, because of dire financial circumstances, unless their rate of pay was

reduced, the employees would have to be terminated.  The employer set forth in the document

the new rate of pay, which was to be effective on a certain date.  The plaintiffs asked whether

this pay cut could be avoided and the employer said 'no', that the only alternative was to

terminate them.  The employees never expressed to the employer that they were "refusing" to

work at the new pay rate or that they were otherwise "rejecting" this new pay rate.  Instead, they

continued to work for the employer, and collected the new, lower pay for the next year without

protest.  After collecting their wages in silence for a year, the plaintiffs then sued the employer

for the difference in pay rates, and claimed that the employer had breached the original contract

to pay the higher rate.   The Court found that the employees had consented to the new pay rate by

their conduct, including by having collected the lower rate for a year without any objection.[14]

In none of these four cases did the employees express any explicit refusal to participate in

the new policy or indicate to the employer that they would not agree to be bound by the new

terms.  To the contrary, from all outward appearances, it seemed reasonable to believe that the

employees were consenting to the new policies. This is, of course, the complete opposite of

Bayer's conduct, where he vigorously and vociferously made it clear that he rejected Neiman's

policy and that he was not agreeing to it nor would he consent to be bound by it.[15]

[14]   The fact that the employees in *DiGiacinto* did not sign the letter informing them of
the new policy was not of any significance to the Court.  There was no indication that signing the
letter was something required by the employer.  Nor did the employees communicate any
'objection' or 'refusal' to the employer.  This is far different from our case, where Neiman kept
telling Bayer that he had to sign the Arbitration Form and that he would be fired if he did not.

[15]   The courts have often found it significant if a party has expressly and clearly objected
to, or refused to agree with, a new policy.  See, e.g., *Shea v. Household Bank* (2003) 105 C.A.4th
85, 87 (credit card company attempted to add arbitration provision; court refused to enforce
against a card holder who informed company through counsel that he would not be bound by the

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

In addition, the courts have often been very strict in requiring that the employer obtain the employee's signature on the actual arbitration agreement before finding that the employee entered into an arbitration contract. Thus, even if an employee has signed a general employee handbook which discusses the arbitration policy, this has been held insufficient to create a binding arbitration agreement, when the employee had not signed the actual arbitration agreement or arbitration provision.[16]

Here, Neiman demanded that employees sign the Arbitration Form in order to confirm the employee's assent to arbitration. Indeed, Neiman threatened to terminate Bayer if he refused to sign the Arbitration Form that accompanied the document explaining the arbitration policy. Thus, Bayer's refusal to sign the Arbitration Form is sufficient, *by itself,* to negate any notion that the parties formed an arbitration contract.

**B.   NEIMAN'S ARBITRATION AGREEMENT IS UNCONSCIONABLE AND UNENFORCEABLE**

Since Bayer never entered into an arbitration agreement with Neiman, Defendant's motion must be denied outright. However, even if Neiman *had* been able to show that Bayer

---

provision and would not agree to it; no mutual consent found); *McCaskey v. CSAA* (2010) 189 Cal.App.4th 947 (employer attempted to change pay policy; employees expressly rejected new policy and refused to give consent as requested by employer).

[16]   See, *Mitri v. Arnel Management, supra,* 157 C.A.4th at 1171 (acknowledgment of receipt of employee handbook which discusses arbitration program, without any signature by employee specifically agreeing to arbitrate, is not sufficient to show mutual assent to arbitrate; nor was employee's continuing to work after receipt of handbook sufficient to show assent to arbitrate; distinguishing *Asmus* and *DiGiacinto* because neither case addressed issue of whether an arbitration agreement existed between employer and employee); *Romo v. Y-3 Holdings* (2001) 87 Cal.App.4th 1153, 1159 (arbitration policy was contained in a section of employee handbook; two different acknowledgment signatures existed; employee did not sign the arbitration section, but only signed the general handbook acknowledgment; no binding agreement to arbitrate); *Nelson v. Cypress Bagdad,* 119 F.3d 756 (9th Cir. 1997) (employee signing acknowledgment form for receipt of handbook which contained arbitration provisions is not sufficient to constitute agreement to arbitrate, even though form said that employee had read and understood contents of handbook).

---

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

entered into an arbitration agreement, the court would be compelled to strike down Neiman's

arbitration agreement as unconscionable and unenforceable.[17]

### 1.   The Court and Not the Arbitrator Decides Unconscionability

#### a.   The "Delegation Provision" Inserted by Neiman is Unenforceable

Neiman argues that the court may not decide the issue of whether the Arbitration Agreement

is valid or enforceable, because that authority has been given to the arbitrator, pursuant to a

"delegation clause" in the Agreement (Paragraph 19).  Neiman claims such a delegation of power

is appropriate, citing *Rent-a-Center West v. Jackson, supra,* and *Dream Theatre v. Dream*

*Theater* (2004) 124 C.A.4[th] 629.  However, neither of those cases addressed the issue of whether

the "delegation clause" <u>itself</u> was unconscionable and unenforceable.  In fact, *Rent-a-Center*

made it clear that, if a party specifically challenges the "delegation provision", that determination

must be made by the court.[18]  The California courts agree.  See, *Murphy v. Check 'N Go* (2007)

156 C.A.4[th] 138, 67 Cal.Rptr.3d 120 (party may assert that arbitration agreement's "delegation

provision" is unconscionable, and court shall decide the issue); *Ontiveros v. DHL* (2008) 164

C.A.4[th] 494, 79 Cal.Rptr.3d 471 (same).

In this Opposition, Bayer <u>does</u> challenge the "delegation provision" of the Neiman

Arbitration Agreement.  And, under California law, the delegation provision which Neiman has

inserted in its Agreement is unconscionable and unenforceable.

In both *Murphy* and *Ontiveros,* the courts held that, in an adhesion employment

arbitration contract, a "delegation provision" which purports to give the arbitrator the power to

---

[17]   Generally applicable state law contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements.  *Doctors Associates v. Casarotto* (1996) 517 U.S. 681, 687, 116 S.Ct. 1652.

[18]   *Rent-a-Center, supra,* 177 L.Ed.2d at 407, 413 ("where an agreement to arbitrate includes an agreement that the arbitrator will determine the enforceability of the agreement, if a party challenges specifically the enforceability of that particular agreement, the district court considers the challenge"); *Quilloin v. Tenet Healthsystem*, 763 F.Supp.2d 707, 724 (E.D.Pa. 2011) (under *Rent-a-Center*, if party challenges delegation provision as being unconscionable and invalid, it is for the trial court to determine); *Laguna v. Coverall,* 2011 U.S. Dist.Lexis 81105 (S.D.Cal.2011) (same).

14

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

determine whether the arbitration agreement is "valid" or "enforceable", was *substantively unconscionable* and could not be enforced. Instead, it must be left to the court to determine such issues, including the question of whether the arbitration agreement is unconscionable.

*Murphy* and *Ontiveros* identified at least two grounds for finding a delegation provision unconscionable in the context of an adhesion employment arbitration agreement. First, there is no mutuality, since the party which drafted the adhesion arbitration agreement is never going to be "challenging" the validity of its own agreement.[19] Second, the arbitrator would not be "neutral" in making the "validity" determination, for at least two separate reasons. First, the arbitrator would be presumptively biased in favor of finding the arbitration agreement to be valid and enforceable, since any finding of "invalidity" would deprive the arbitrator of having anything to arbitrate, and so would deprive him of his arbitrator fees! Second, if the arbitrator struck down an employer's arbitration agreement as invalid, he would be highly unlikely to receive any future arbitration business from that employer (the "repeat player" effect), in addition to damaging his chances of winning arbitration assignments from other employers who had drafted questionable arbitration agreements.[20]

### b. There is Ambiguity About Who Is to Hear "Unconscionability" Claims

Separate and apart from the issue of whether the "delegation provision" is unconscionable, the court could also decide that there is not "clear and unmistakable" evidence that the parties intended for issues of "unconscionability" to be determined by the arbitrator. The presumption is that parties intend for the courts—and not the arbitrator--to decide issues of validity and enforceability, and so "courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Rent-a-Center,*

---

[19]   "In assessing substantive unconscionability, the paramount consideration is mutuality". *Murphy, supra,* 156 C.A.4th at 145. The *Murphy* court distinguished *Dream Theater,* noting that there was no 'adhesion contract' in that case.

[20]   In *Ontiveros,* the court stated that, "placing an arbitrator in such a position seems to compromise one of the minimum requirements set forth by the Supreme Court for lawful arbitration of nonwaivable statutory civil rights in the workplace pursuant to a mandatory employment arbitration agreement---to provide for neutral arbitrators---and therefore contravenes public policy." 164 C.A.4th at 507.

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

*supra,* 130 S.Ct. at 2777, n.1; *Murphy, supra,* 156 C.A.4th at 144 ("the question of arbitrability is for judicial determination unless the parties clearly and unmistakably provide otherwise").

An arbitration agreement fails to meet this stringent test if there are any provisions in the agreement which create ambiguity. Thus, in *Hartley v. Superior Court* (2011) 196 C.A.4th 1249, *Parada v. Superior Court* (2009) 176 C.A.4th 1554 and *Baker v. Osborne* (2008) 159 C.A.4th 884, each court found that the existence of a 'severability' provision in the arbitration agreement created ambiguity about whether the court or the arbitrator was to determine whether the arbitration agreement was unconscionable. In each case, the severability provision had language indicating that the parties contemplated that a *court* might determine that a provision in the agreement was unconscionable. This created sufficient ambiguity that the stringent "clear and unmistakable evidence" standard was not met, and so issues of unconscionability must be determined by the *court*, not by the arbitrator. In the Neiman Agreement, this same ambiguity exists because Paragraph 22 contains a "severability" provision which specifically contemplates that a **court** may make a determination that any provision of the Agreement is unenforceable, or that the Agreement in its entirety is unenforceable.[21]

### 2. The Neiman Arbitration Agreement is Unconscionable and Unenforceable

Under *Armendariz v. Foundation Health Pyschcare Services* (2000) 24 Cal.4th 83, a mandatory arbitration agreement is unconscionable and void as against public policy if it fails to guarantee the protection of minimum statutory rights, or if its practical effect is exculpatory.[22]

---

[21] Since one basis for rendering the agreement "unenforceable" would be a determination that certain provisions in the Agreement, or the Agreement as a whole, are unconscionable, Paragraph 22 indicates that an employee may challenge the Agreement in court and receive a ruling there on the issue of "unconscionability". As a matter of law, this creates sufficient ambiguity to fall short of the "clear and unmistakable evidence" standard, thus leaving "unconscionability" determinations to the court. In *Hartley,* the court also noted that any doubts as to ambiguity should be interpreted against the employer (the drafter). 196 C.A.4th at 1258.

[22] *Armendariz* identified Civil Code Sections 1668 and 3513 as the basis for the public policy prohibiting mandatory arbitration of unwaivable statutory claims. 24 Cal.4th at 99-100. Civil Code Sec. 1688 provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

*Bayer v. Neiman Marcus,* Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

An agreement requiring mandatory arbitration of statutory employment claims must meet five minimum requirements: 1) provide for neutral arbitrators; 2) provide for more than minimal discovery; 3) require a written award; 4) provide for all the types of relief that would otherwise be available in court; and 5) not require employees to pay either unreasonable costs or any arbitrators' fees as a condition of access to the arbitration forum. 24 Cal.4th at 100.  If the arbitration agreement fails to meet any of these standards, it will be held to violate public policy and will be deemed "unconscionable".  Neiman's Arbitration Agreement fails to meet four of the five *Armendariz* standards.

The doctrine of unconscionability has both a procedural and a substantive element.[23]  The Neiman Agreement is "procedurally" unconscionable because it is an adhesion contract.[24]  *Stirlen, supra,* 51 C.A.4th at 1531; *Fitz v. NCR* (2004) 118 C.A.4th 702.  The Neiman Agreement is also "substantively" unconscionable and violates public policy.  Indeed, it contains numerous provisions that violate *Armendariz* and has the sorts of "multiple defects" that reflect an employer's "systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Armendariz, supra,* 24 Cal.4th at 124; *Ingle v. Circuit City,* 328 F.3d 1165 (9th Cir 2003).

### 1) <u>Shortened Statute of Limitations</u>

Paragraph 14 of the Arbitration Agreement requires that any arbitration claim must be brought within one year after the end of the plaintiff's employment with the company.  At the

property of another, or violation of law...are against the policy of the law."  Civil Code Sec. 3513 provides that, "anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by private agreement."

[23]   These elements do not need to be present in the same degree.  Courts use a "sliding scale" approach. The more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa. *Stirlen v. Supercuts* (1997) 51 C.A.4th 1519, 1531.

[24]   An "adhesion contract" is one drafted and imposed by the stronger party on one with less bargaining power, and is imposed on a take it or leave it basis, with no opportunity for negotiation over the terms. *Stirlen, supra* 51 C.A.4th at 1531.  In our case, Neiman unilaterally drafted and then imposed the Agreement on its employees as a condition of employment, without negotiation and under the threat of termination if the employee did not sign or agree to it.

17

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

*Bayer v. Neiman Marcus,* Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

same time, Paragraph 14(b) requires the employee to comply with all administrative

requirements under the EEOC or state agencies before the employee can file an arbitration claim.

This effort to shorten numerous statutes of limitations is illegal and unenforceable.

In *Gilmer v. Interstate/Johnson Lane* (1991) 500 U.S. 26, 111 S.Ct. 1647, 1652, the Court

held that "by agreeing to arbitrate a statutory claim, a party does not forego the substantive rights

afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial,

forum". In keeping with *Gilmer,* the California courts have thus held that arbitration agreements

are unenforceable if they restrict any rights or remedies under a statute. *Armendariz, supra,* 24

Cal.4th at 101. Both state and federal courts have repeatedly held that dramatically shortening

the statute of limitations periods for potential employment-related claims is impermissible in the

context of a mandatory employment arbitration agreement.[25] Courts have consistently struck

down such agreements as unconscionable and violative of public policy because such restrictions

simply do not permit employees to adequately vindicate their statutory rights.[26]

Giving the arbitrator "discretion" to extend the limitations period is not an adequate

solution. First, as *Armendariz* pointed out (in the context of cost-shifting and the *risk* of future

burden), a mandatory arbitration agreement must *guarantee* substantive rights to be enforceable,

---

[25]   See, *Martinez v. Master Protection* (2004) 118 C.A.4th 107, 117; *Circuit City v. Mantor* (9th Cir. 2003) 335 F.3d 1101, 1107; *Lachi Delisa v. CH2M Hill* (2001) 26 Cal.4th 798, 811; *Graham Oil v. ARCO* (9th Cir. 1994) 43 F.3d 1244, 1246; *Ingle v. Circuit City, supra,* 328 F.3d at 1175; *Davis v. O'Melveny* 485 F.3d 1066, 1077 (9th Cir. 2007); *Circuit City v. Adams* (9th Cir. 2002) 279 F.3d 889, 894; *Wherry v. Award, Inc.* (2011) 192 C.A.4th 1242.

[26]   For example, in California, the statute of limitations for wrongful termination in violation of public policy is 2 years; fraud is 3 years; and a violation of the Labor Code (including wage claims) is 3 years. See, C.C.P. Secs. 335.1, 338(d), *Gentry v. Superior Court,* (2007) 42 Cal.4th 443, 470. Federal wage claims under the FSLA are either 2 or 3 years. 29 U.S.C. Sec. 255(a). Indeed, some claims would not even come into existence until after Neiman's "one year post-termination" limitations period had expired, and thus such claims would be automatically barred. For example, Paragraph 14 would potentially prevent employees from bringing post-termination retaliation claims under Title VII, i.e., claims that arose well after their employment ended. See**,** *Robinson v. Shell* (1997) 519 U.S. 337, 117 S.Ct. 843 (former employees can bring claims under Title VII for post-termination retaliation).

---

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

and may not place them at the essentially unreviewable discretion of an arbitrator. 24 Cal.4[th] at 110; *Ferguson v. Countrywide* (9th Cir. 2002) 298 F.3d 778, 785, n. 8. Second, many individuals reading the Arbitration Agreement will not even bother commencing arbitration beyond the one year period, because the claim will *appear* to be barred.

In addition, by requiring the employee to exhaust administrative remedies with the EEOC or DFEH before filing his arbitration claim, Neiman has created a situation where such exhaustion may make an arbitration claim *impossible* to bring because it would be "untimely" by the time a right to sue letter is obtained. Indeed, as noted in the Introduction, *supra,* this is exactly the situation facing Bayer---his right to sue letter from the EEOC was not issued until more than 2 years after his termination, even though Bayer filed his EEOC claim in a timely fashion with the EEOC.[27] Alternatively, an employee rushing to meet Neiman's one year statute might be forced to ask the administrative agency to "stop" investigating his claims and issue an immediate right to sue letter. This would result in the employee forfeiting his rights and remedies under the EEOC and DFEH, thereby forcing a waiver of additional statutory rights.[28]

### 2) The Arbitration Panel and Selection Process Are Not Neutral

Paragraph 9(c) of the Agreement limits the selection of arbitrators to members of the Texas state bar who reside in Texas---Neiman's home state. There is no justification for restricting the arbitration panel in this way, especially when the Agreement provides that the arbitration itself will occur within 50 miles of the employee's last work place (Paragraph 13(b)) and where California law would govern a California employee. This pre-selected narrow group of arbitrators is not only irrational, but they are not likely to be "neutral". Texas arbitrators are

---

[27]   It is not unusual for the EEOC to take a year or more to investigate a claim of discrimination or retaliation. Bayer was terminated in January 2009, but the EEOC did not issue him a right to sue letter until April 2011. Palefsky Dec., Ex. A. This shows how preposterous it is for Neiman to ask this Court to send Bayer's claim to arbitration. If the Court did so, there would be nothing to arbitrate: under Neiman's Arbitration Agreement, Bayer's arbitration claim would be immediately thrown out as "untimely".

[28]   In fact, the EEOC found "cause" to believe that the Neiman Arbitration Agreement was illegal under the federal anti-discrimination laws, in part because of the shortened statute of limitations. Palefsky Dec., Par. 3, Ex. B.

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

more likely to rule in favor of Neiman---not simply because Texas is Neiman's home state, but because if they rule against Neiman, it is far less likely that Neiman would ever select them as arbitrators again (or hire them as attorneys). Texas lawyers/arbitrators would certainly be more influenced by the prospect of Neiman as a future source of revenue than they would an individual plaintiff in California.[29]

Indeed, the only reason for the designation of Texas arbitrators is to tilt the scales in Neiman's favor. Yet the most essential component of a fair arbitration is a ***neutral*** arbitrator, and numerous courts have therefore struck down attempts by companies to either unilaterally select or drastically narrow the potential panel of arbitrators.[30]

Neiman's effort to control the arbitration panel in a way that will favor Neiman is also demonstrated by Paragraph 9(a), which permits the "respondent" to add two arbitrators at any point in the proceeding before the hearing commences. In reality, in an employment case, the "respondent" will almost ***always*** be Neiman.[31] Neiman's right to unilaterally add two arbitrators at any point is outrageous and creates an opportunity for gross unfairness. Basically, Neiman can "judge shop", electing to add two arbitrators to the panel if it does not like the way the chosen arbitrator has ruled on pre-hearing motions.

### 3) Limitations on Discovery

*Armendariz* held that undue limitations on discovery are unlawful and against public policy

---

[29]  The courts have expressed serious concern over this "repeat player" effect in the context of mandatory adhesion employment arbitration agreements—especially where the pool of potential arbitrators is relatively limited. See, *Ontiveros v. DHL, supra; Mercuro v. Superior Court* (2002) 96 C.A.4th 167, 178; *Armendariz, supra,* 24 Cal. 4th at 115.

[30]  *See, e.g., Hooters v. Phillips*, 173 F.3d 933 (4th Cir. 1999); *Graham v. Scissor-Tail* (1981) 28 Cal.3d 807, 826; *Sanchez v. Western Pizza* (2009) 172 C.A.4th 154, 178; *Cheng-Canindin v. Renaissance Hotel* (1996) 50 C.A.4th 676, 687; *Chicago Teachers Union v. Hudson* (1086) 475 U.S. 292, 308; *McMullen v. Meijer* (6th Cir. 2004) 355 F.3d 485, 493; *Murray v. United Commercial Food Workers* (4th Cir. 2002) 289 F.3d 297, 303.

[31]  See, e.g., *Davis v. O'Melveny* (9th Cir. 2007) 485 F.3d 1066, 1076; *Ingle, supra,* 328 F.3d at 1173 ("the only claims realistically affected by arbitration agreements between an employer and an employee are those claims employees bring against their employer").

---

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

20

1  in the context of an employee attempting to vindicate statutory rights.  24 Cal. 4th at 104.

2  Neiman's arbitration policy severely limits the discovery available to an employee.  Paragraph 12

3  requires that all discovery be completed within 90 days of the arbitrator's appointment, and

4  permits only 3 depositions, limits depositions to 6 hours, permits an employee to question a

5  corporate representative on no more than 3 topics, and puts a limit of 30 total "discovery

6  requests".  The Agreement also limits the ability to get electronic discovery.

7       Such restrictions on discovery are especially problematic for a plaintiff employee, since the

8  employer inevitably possesses virtually all of the relevant information.  Many courts have

9  followed *Armendariz* and have struck down as unconscionable discovery limitations in

10  mandatory arbitration agreements. See, *Fitz v. NCR* (2004) 118 C.A.4th 702, 717 (limitations on

11  depositions); *Kinney v. United Healthcare* (1999) 70 C.A.4th 1322 (limit of 25 document

12  requests and two depositions of 8 hours each unconscionable); *Ferguson v. Countrywide* (9th Cir.

13  2003) 298 F.3d 778 (limiting parties to 3 depositions and corporate representative to only having

14  to address four topics is part of unconscionable pattern designed to advantage employer).[32]

15       **4)  Ban on Class or Collective Actions or Joinder of Claims**.

16       The Arbitration Agreement restricts the remedies available to an employee because

17  Paragraph 15 expressly prohibits class action claims---or any sort of joint claims with other

18  employees.  It is illegal under California and federal law to take away *employees'* ability to

19  pursue their statutory employment claims jointly or as a class action.  In addition to preventing

20  employees from bringing the types of wage claims which are frequently brought as class actions

21  (overtime pay, minimum wage, rest and break period claims, etc.), a prohibition on class or

22  collective action also interferes with the ability to bring discrimination and other civil rights

23

24  [32]  As explained above, the fact that the arbitrator has "discretion" to expand discovery does

25  not save the Agreement.  The Agreement creates a presumption that the Agreement's discovery
    is adequate, and the employee would have to meet some sort of unknowable "burden" at the

26  whim of the arbitrator.  And, all discovery must be completed within 90 days.  Such a time frame
    is abysmally short, especially for an employee plaintiff.  Neiman's Agreement also requires the

27  appointment of a "second" arbitrator to decide any discovery objections related to the assertion
    of a "privilege", making the 90 day window especially problematic.  Par. 12(g).

28                                                                                              21

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

actions, which have historically proceeded as class actions.   Courts have therefore routinely

struck down arbitration agreements which prohibit the filing of employee class or collective

actions, since such prohibitions prevent an employee from vindicating statutory rights.[33]

Indeed, there are numerous federal statutes which *specifically* include language

highlighting and protecting the right of employees to bring joint or collective actions (including

class actions) in order to vindicate rights under that statute.  The Age Discrimination in

Employment Act ("ADEA", 29 U.S.C. Sec. 621, 626(b)); the Family Medical Leave Act

("FMLA", 29 U.S.C. Sec. 2601, 2617(a)(2)); the Fair Labor Standards Act ("FSLA", 29 U.S.C.

Sec. 201, 216(b)); and the Equal Pay Act ("EPA", 29 U.S.C. Sec. 206(d), 216(b)) all contain

such language, precisely so that employees can jointly and collectively pursue effective remedies

under these statutes.[34]

Furthermore, California Labor Code Section 923 and the National Labor Relations Act

(29 U.S.C. Section 157) *guarantee* to employees the right to act in concert and collectively to

vindicate their rights.  Neiman's effort to bar any type of collective action by its employees thus

violates both the California Labor Code and federal labor law.  See, *Harco Trucking* (2005) 344

NLRB 478; *Trinity Trucking* (1975) 221 NLRB 364 (filing of a civil action by groups of

employees seeking to improve their working conditions is protected concerted activity under the

NLRA).  Indeed, after Bayer filed a charge against Neiman with the NLRB in 2007, the General

---

[33]   *Gentry v. Superior Court* (2007) 42 Cal.4th 443; *Keating v. Superior Court* (1982) 31 Cal.3d
584; *Ingle v. Circuit City, supra; Circuit City v. Mantor, supra,* 335 F.3d 1101; *Ting v. AT & T*
(9th Cir. 2003) 319 F.3d 1126; *Murphy v. Check 'N Go, supra; Chen-Oster v. Goldman Sachs,*
2011 U.S. Dist.Lexis 46994 (S.D.N.Y. 2011) (prohibition on bringing judicial class action has
effect of preventing plaintiff employee from vindicating Title VII claims relating to "pattern and
practice" discrimination by employer; arbitration agreement held unenforceable).
[34]   The FMLA states: "An action to recover damages or equitable relief…may be maintained…
in any Federal or State court…by any one or more employees for and in behalf of: (A) the
employees; or (B) the employees and other employees similarly situated." 29 U.S.C. Sec.
2617(a)(2). The FSLA and EPA state: "An action to recover the liability prescribed…may be
maintained against any employer…in any Federal or State court…by any one or more employees
for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C.
Sec. 216(b). The ADEA adopts the enforcement procedures and remedies of the FSLA.  29
U.S.C. Sec. 2926(b).

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

Counsel of the NLRB determined that Neiman's prohibition on joinder of claims or collective action was impermissible under the NLRA, and required Neiman to remove this joinder prohibition from future employment arbitration agreements. Palefsky Dec., Par. 4; Ex. C.[35]

Neiman will doubtless argue that a prohibition on class actions is permitted in arbitration agreements, relying on *AT & T v. Concepcion* (2011) 131 S.Ct. 1740, 179 L.Ed.2d 742. However, *Concepcion* does not stand for such a broad proposition. First, *Concepcion* only held that *California* state unconscionability law could not be used as a blanket means to strike down arbitration agreements which prohibited class actions in *consumer* cases. However, as noted above, there are numerous *federal* employment statutes which specifically guarantee the right of employees to act collectively in order to vindicate their statutory rights. California unconscionability law has nothing to do with these statutes. Neiman's purported prohibition on collective action by *employees* is a direct violation of the mandates of these federal employment statutes. As the courts have made clear many times, arbitration agreements are only valid to the extent that they permit the full vindication of statutory rights.[36]

---

[35] The U.S. Department of Labor and the EEOC have taken the same position, i.e., that an employer's effort to bar class actions or collective actions by employees violates Section 7 of the NLRA and is unlawful. Palefsky Dec., Par. 5; Ex. D. Ironically, Neiman's desire to eliminate collective and class actions by its employees was deemed so important to Neiman that it added a paragraph to its Arbitration Agreement which stated that Paragraph 15 could *not* be severed. In other words, if its purported ban on collective actions was held invalid, then Neiman preferred to have its entire Arbitration Agreement deemed unenforceable! Yet the NLRB's General Counsel *did* determine that Paragraph 15 violated the NLRA.

[36] A prohibition on collective actions or joinder of claims would strip employees of critical statutory rights set forth in federal and state wage and discrimination statutes. Indeed, a prohibition on collective action would constitute a de facto waiver of statutory rights with respect to numerous claims, such as overtime or equal pay claims involving small amounts of money, pattern and practice discrimination claims, and others which are difficult or impractical to bring *except* as a collective or class action. Prohibitions on class actions in adhesion employment contracts are designed to have an exculpatory effect, reducing the employer's exposure for statutory and public policy violations by making it "very difficult for those injured by unlawful conduct to pursue a remedy." *Gentry, supra,* 42 Cal.4[th] at 457. These prohibitions may "lead to a de facto waiver [of statutory rights]" and "impermissibly interfere with employees' ability to vindicate unwaivable rights". *Id.*

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

Second, *Concepcion* was a consumer contract case, involving a common law fraud claim. It had nothing to do with the employment relationship or with statutory rights.[37] Third, *Concepcion* stressed the unique feature of the arbitration agreement at issue, which required a *minimum* payment of $7,500 to a plaintiff who prevailed at arbitration, in addition to a mandatory award of other fees and costs. This feature made it likely that an individual consumer would have both the incentive and the ability to fully vindicate any claim, and thus a "collective" or "class" action would not be a necessary tool. The Neiman agreement has no such provision.

### 5) The Employee May Not Be Required to Pay Improper Costs and Fees

Under Paragraph 11 of the Agreement, arbitrators can award costs and arbitrator fees to the prevailing party. This directly contravenes the *Armendariz* requirement that, when subjected to a mandatory arbitration agreement, employees may ***not*** be required to pay any arbitrator fees as a condition of access to the arbitration forum. 24 Cal.4th at 110-11; see also, *Little v. Auto Stiegler* (2003) 29 Cal.4th 1064, 1084; *Wherry v. Award, Inc., supra,* 192 C.A.4th 1242.[38]

Paragraph 11 also impermissibly allows the arbitrator the discretion ***not*** to award a prevailing employee his or her attorneys fees, despite the fact that many California employment law statutes absolutely entitle prevailing employees to such an award. See, e.g., Labor Code Section 1194 (wage claims); Government Code Section 12965(b) (FEHA claims). The fact that the arbitrator "might" award such fees to a prevailing plaintiff does not solve the problem. The

---

[37]   Notably, the Supreme Court in *Concepcion* repeatedly referred to the fact that it was dealing with a consumer arbitration contract, and the California cases it referred to in its holding were consumer cases. Of special significance, the Court did not even mention or seek to overrule the California Supreme Court's decision in *Gentry, supra,* 42 Cal.4th 443, which invalidated an employer's efforts to prohibit class actions by employees. See, *Brown v. Ralph's Grocery* (2011) 197 C.A.4th 189 (noting that *Concepcion* does not overrule the holding of *Gentry).*

[38]   The fact that the arbitrator "might" ultimately decide not to assess such costs against a losing plaintiff does not save the provision from being held unconscionable. "It is not only the costs imposed on the claimant but the *risk* that the claimant may have to bear substantial costs that deters (and chills) the exercise of the right to be free of workplace discrimination". *Armendariz, supra,* 24 Cal. 4th at 110.  Furthermore, Paragraph 9(a) of the Agreement gives Neiman the chance to add two additional arbitrators, which could add tens of thousands of dollars to the fees, thereby greatly increasing the financial risk to an individual employee.

---

24

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

Agreement creates the *risk* that the arbitrator may simply decide not to award such fees, in contravention of *Armendariz*.[39]

Taken as a whole, this Agreement is blatantly designed to chill the exercise of protected rights of a California employee and to skew the results of any arbitration in favor of Neiman, indicating that the company's purpose was impermissibly exculpatory and contrary to public policy. See, *Gentry, supra,* 42 Cal.4th at 457; *Ingle v. Circuit City, supra,* 328 F.3d at 1170, 1175. Defendant's Agreement is unconscionable and unenforceable as a matter of law.

## CONCLUSION

For the reasons set forth above, Defendant's Motion should be denied.

Dated: October ___, 2011                    McGUINN HILLSMAN & PALEFSKY

_____
Cliff Palefsky
Attorneys for Plaintiff, Tayler Bayer

---

[39]   The Agreement contains other provisions which demonstrate the cynical manner in which Neiman drafted the arbitration policy to gain perceived advantages over its employees. Paragraphs 13(b) and 16 require the use of Texas procedural rules and caselaw to govern all motions and state law claims, and requires Fifth Circuit law to govern all federal claims, regardless of where those claims arise and what law would be applied in court.  This is outrageous in the context of a California resident who worked exclusively for Neiman in California, where California employment and wage and labor statutes (including FEHA) provide specific protections for California employees.  Paragraph 15 states that the Agreement shall be enforced under Texas law and Fifth Circuit law, even though Bayer is a California employee who has absolutely no connection to Texas, and who would stand to lose the protections available under California contract law to resident employees who are forced to enter into mandatory arbitration agreements (including California's unconscionability statutes and common law principles).  See, *America Online v. Superior Court* (2001) 90 C.A.4th 1, 13 (an agreement designating a foreign law will not be given effect if it would violate a strong California public policy or result in an evasion of a statute of the forum protecting its citizens).

*Bayer v. Neiman Marcus*, Case No. 11-CV-03705-MEJ, Opp. to Motion to Compel

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292