UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| TAYLER BAYER,<br><br>    Plaintiff,<br> v.<br>NEIMAN MARCUS HOLDINGS, INC.,<br><br>    Defendant.<br>_____/ | No. CV 11-3705 MEJ<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>**(Docket No. 17)** |

## I. INTRODUCTION

Plaintiff Tayler Bayer ("Plaintiff") brings this action against Defendant Neiman Marcus Holdings, Inc. ("Defendant" or "Neiman Marcus"), his former employer, alleging disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"). Compl., Dkt. No. 1. Pending before the Court is Defendant's Motion to Compel Arbitration and Dismiss. Dkt. No. 17. In its Motion, Defendant argues that Plaintiff has brought this action in violation of the parties' agreement to arbitrate claims. Def.'s Mot. at 1. Because the Court finds this matter suitable for resolution based on the parties' written submissions, the Court **VACATES** the hearing set for November 17, 2011. *See* Civil L.R. 7-1(b). After careful consideration of the parties' arguments, the Court **DENIES** Defendant's motion for the reasons set forth below.

## II. BACKGROUND

Neiman Marcus owns and operates a chain of upscale specialty retail department stores. Compl. ¶ 4. Plaintiff began working for Defendant as a full-time Cosmetic Sales Associate on March 29, 2006. *Id.* ¶ 5. In March 2007, Plaintiff was placed on medical leave by his physician due to respiratory problems. *Id.* ¶ 6. In April 2007, Plaintiff was diagnosed as suffering from emphysema, and he subsequently remained on medical leave until June 1, 2007. *Id.* Although Plaintiff was

Case3:11-cv-03705-MEJ   Document28   Filed11/08/11   Page2 of 10

1 authorized by his physician to return to work on that date, his physician placed certain restrictions on
2 his work, including working no more than eight-hour shifts, four days per week. *Id.* ¶ 7. Plaintiff
3 alleges that Defendant refused to accommodate his medical condition and would not modify his work
4 schedule in the manner requested. *Id.* ¶ 8. Instead, Plaintiff alleges that Defendant insisted he work
5 no more than a six-hour shift per day. *Id.* This refusal to accommodate meant that he could only
6 work a maximum of 24 hours per week and, since Defendant required full-time employees to work a
7 minimum of 30 hours per week, Plaintiff subsequently lost his status as a full-time employee. *Id.* ¶¶
8 5, 9. Plaintiff contends that he therefore lost all Neiman Marcus benefits. *Id.* ¶ 9.

9       On June 20, 2007, Plaintiff filed an administrative complaint with the Equal Employment
10 Opportunity Commission ("EEOC"), alleging that Defendant had discriminated against him on the
11 basis of his disability/medical condition, that it failed to accommodate his medical
12 condition/disability, and that it had retaliated against him, all in violation of the ADA. *Id.* ¶ 10, Ex.
13 A.

14       On or about June 11, 2007, all Neiman Marcus employees were mailed notice of the
15 implementation of a dispute resolution program, which included a mandatory arbitration agreement
16 titled "The Neiman Marcus Group, Inc. Mandatory Arbitration Agreement" ("the Arbitration
17 Agreement"). *Id.* ¶ 11, Ex. B; Kern Decl. ¶¶ 6, 9-10, Dkt. No. 11. Plaintiff alleges that Defendant
18 told him that the Arbitration Agreement was not optional, and that he would be bound by its terms if
19 he continued to show up for work. Compl. ¶ 11. Plaintiff further alleges that, by "threatening to
20 terminate [his] employment unless he consented to the terms of its mandatory Arbitration Agreement,
21 Neiman Marcus was attempting to coerce and intimidate [him] into giving up certain rights provided
22 to him under the ADA." *Id.* As part of the mailing, Defendant included a form titled

23                THE NEIMAN MARCUS GROUP, INC.
               MANDATORY ARBITRATION AGREEMENT
24                ASSOCIATE ACKNOWLEDGMENT FORM

25 Kern Decl. ¶ 10 fn.1, Ex. F. This form required the employee's signature and provided that the
26 employee "acknowledge and affirm that":

27     I have received and had an opportunity to review the [Neiman Marcus] Mandatory
    Arbitration Agreement . . .
28

> I understand that the Arbitration Agreement is an **important legal document** that requires me to submit all complaints, disputes, and legal claims ("Disputes") I have against the Company, and the Company to submit **all Disputes** it has against me, to **binding arbitration**;
>
> I understand that the Arbitration Agreement means both I and the Company are **waiving the right to a trial by jury or to a trial before a judge** in a court of law on all Disputes. Instead, all Disputes must be submitted to final and binding arbitration;
>
> I understand that the Arbitration Agreement is **not optional**. Rather, it is **mandatory** and a condition and term of my employment if I am employed or continue employment on or after July 15, 2007.

*Id.* at Ex. F (emphasis in original). Plaintiff did not sign this form. *Id.* ¶ 10 fn.1.

In response to the Arbitration Agreement, Plaintiff filed a second administrative claim against Defendant with the EEOC on or about July 9, 2007. Compl. ¶ 12, Ex. C. In his second claim, Plaintiff alleged that Defendant had discriminated against him in violation of his rights under the ADA by attempting to coerce him into signing the Arbitration Agreement as a condition of continued employment. *Id.* ¶ 12.

In October 2007, the EEOC issued a right to sue letter to Plaintiff in connection with his original EEOC charge of discrimination. *Id.* ¶ 14. In January 2008, Plaintiff filed a civil lawsuit against Defendant in this Court for violation of the ADA, based on Defendant's alleged discriminatory conduct in June 2007 with respect to Plaintiff's physical disability and Defendant's refusal to accommodate him by providing full-time employment. *Taylor Bayer v. Neiman Marcus Holdings, Inc.*, C08-0480 PJH. In April 2008, the parties entered into a settlement of the January 2008 Complaint. Compl. ¶ 14. The Settlement Agreement specifically excluded from its scope any claims which Plaintiff might have with respect to challenging the validity or enforceability of the Arbitration Agreement. *Id.*

Plaintiff continued to work at Neiman Marcus throughout 2008. *Id.* In January 2009, Defendant terminated Plaintiff's employment. *Id.* ¶ 16. Plaintiff alleges that it terminated him in retaliation for his having filed discrimination and retaliation charges against Defendant with the EEOC. *Id.* Plaintiff filed a third claim of discrimination and retaliation against Defendant with the EEOC in or about August 2009. *Id.* ¶ 17, Ex. D. The EEOC has issued a right to sue letter to Plaintiff with respect to this third claim. *Id.* ¶ 18.

3

1    On July 27, 2011, Plaintiff filed the present Complaint, alleging one cause of action under 42
2 U.S.C. § 12203(a) for discrimination and retaliation by Defendant against Plaintiff for his having
3 opposed Defendant's alleged unlawful actions, including for his having filed EEOC charges. *Id.* ¶
4 22. Plaintiff seeks economic, general, and punitive damages; attorneys' fees and costs; interest; and
5 such other relief as the Court deems proper. *Id.* at 8-9.

6    On September 22, 2011, Defendant filed the present Motion to Compel Arbitration and
7 Dismiss. Dkt. No. 17. Plaintiff filed his Opposition on October 6, 2011. Dkt. No. 18. Defendant
8 filed its Reply on October 25, 2011. Dkt. No. 27.

### III. DISCUSSION

10   In its motion, Defendant argues that, as a matter of law, it has a valid and enforceable
11 agreement with Plaintiff to arbitrate claims, including those brought in this action. Def.'s Mot. at 1.
12 Specifically, Defendant argues that Plaintiff was put on notice of the terms of the Arbitration
13 Agreement when Defendant sent notice documents to Plaintiff that stated that all employees would be
14 deemed to have agreed to the agreement if they continued to work at Neiman Marcus. *Id.* at 4, 7-8.
15 Because Plaintiff admits that he received the notice and continued working at Neiman Marcus,
16 Defendant contends that Plaintiff is deemed to have accepted the Arbitration Agreement. *Id.* at 8.
17 Thus, Defendant argues that the Arbitration Agreement extends to the claims brought in this action,
18 and it now moves this Court for an order compelling Plaintiff to arbitrate his claims pursuant to the
19 Arbitration Agreement and dismissing this action or, in the alternative, staying this action pending
20 completion of the arbitration. *Id.* at 1.

21   In his Opposition, Plaintiff states that, when Defendant "tried to impose an arbitration policy
22 on its employees in 2007 under threat of termination, [Plaintiff] expressly ***refused*** to become a party
23 to the arbitration agreement; ***refused*** to sign the arbitration agreement form; and repeatedly told
24 Neiman both orally and in writing that he would ***not*** agree or consent to Neiman's arbitration
25 program." Pl.'s Opp'n at 1 (emphasis in original). Thus, Plaintiff argues that he is not a party to an
26 agreement to arbitrate because there is a lack of consent. *Id.* Plaintiff further argues that, even if
27 Defendant could show that he consented to the agreement, Defendant's arbitration policy is

4

unconscionable and violates public policy, and is therefore unenforceable. *Id.* Specifically, Plaintiff argues that the Arbitration Agreement is procedurally unconscionable because it is an adhesion contract, drafted and imposed by the stronger party on one with less bargaining power. *Id.* at 17. Plaintiff further argues that the agreement is also substantively unconscionable because it has a shortened statute of limitations, the arbitration panel and selection process are not neutral, it places undue limitations on discovery, restricts the remedies available to an employee because it expressly prohibits class action claims, and requires that the employee pay arbitrator fees as a condition of access to the arbitration forum. *Id.* at 17-24.

## A.   Legal Standard

The Federal Arbitration Act ("FAA") provides that written agreements to settle a controversy through arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA placed arbitration agreements on equal footing with other contracts and created a federal policy in favor of arbitration. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2001). Thus, a court's role in applying the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted). The FAA leaves no place for the exercise of discretion by a district court. *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985).

In enacting the FAA, "Congress declared a national policy favoring arbitration . . . ." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *see also Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 n.8 (9th Cir. 1991) ("The [FAA] reflects the strong Congressional policy favoring arbitration by making such clauses 'valid, irrevocable, and enforceable.'") (quoting 9 U.S.C. § 2). Allowing parties to design an arbitration process tailored to their dispute allows for efficient, streamlined procedures. *AT&T Mobility LLC v. Concepcion*, ___ U.S. ___, 131 S. Ct. 1740, 1749 (2011). Thus, courts have consistently applied a "liberal federal policy favoring arbitration

agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[A]ny doubts concerning the scope of arbitrable issues [are to] be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24–25.

Although the FAA provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable," courts may decline to enforce them when grounds "exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). In interpreting the validity and scope of an arbitration agreement, courts apply state law principles of contract formation and interpretation. *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998).

"When evaluating a motion to compel arbitration, courts treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Chavez v. Bank of America*, 2011 WL 4712204, at *3 (N.D. Cal. Oct. 07, 2011) (citing *Perez v. Maid Brigade, Inc.*, 2007 WL 2990368, at *3 (N.D. Cal. Oct.7, 2007)).

**B.     Application to the Case at Bar**

Under California contract law, the elements for a viable contract are (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999). Here, there is no question that the parties were capable of contracting and that the arbitration agreement related to a lawful matter. Nor can there be any dispute as to whether the arbitration agreement was supported by sufficient consideration. *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (an employer's promise to be bound by the arbitration process itself serves as adequate consideration); *see also Strotz v. Dean Witter Reynolds*, 223 Cal. App. 3d 208, 216 (1990) ("Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to

6

arbitrate their disputes provide consideration for each other."), *overruled on other grounds by Rosenthal v. Great Western Fin. Secs. Corp.*, 14 Cal. 4th 394 (1996). Thus, the question of the validity of the arbitration agreement at issue in this case pertains to whether Plaintiff actually consented to the agreement.

It is undisputed that Plaintiff continued working at Neiman Marcus after he received notice of the Arbitration Agreement and its terms. It is also undisputed that the Agreement specifically provides that if an employee continues his employment with Neiman Marcus on or after July 15, 2007, the employee is bound by its terms. Kern Decl., Ex. B. Despite this language, Plaintiff argues that "there is no plausible basis to conclude that [he] expressed an intention to 'accept' Neiman's proposed arbitration terms, or that [his] 'outward manifestations and expressions' would lead a reasonable person to believe that he was agreeing to be a party to Neiman's arbitration program" because he "explicitly and repeatedly ***rejected and refused*** Neiman's arbitration policy." Pl.'s Opp'n at 8 (emphasis is original).

In California, a party's acceptance of an agreement to arbitrate may be express (*e.g., Mago v. Shearson Lehman Hutton Inc.,* 956 F.2d 932 (9th Cir. 1992) [agreement to arbitrate included in job application]; *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437 (9th Cir. 1994) [agreement to arbitrate included in handbook executed by employee]; *Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105 (1999) [employer may terminate employee who refuses to sign agreement to arbitrate]) or implied-in-fact where the employee's continued employment constitutes her acceptance of an agreement proposed by her employer (*Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 421-22 (2000) [implied acceptance of agreement to arbitrate where plaintiff continued to work after receipt of arbitration agreement]).

Under *Craig*, it would appear that Plaintiff's acceptance of the Arbitration Agreement can be implied by his continued employment at Neiman Marcus. However, as Plaintiff correctly points out, the plaintiff in *Craig* did not express refusal of the new terms, explicitly reject the new terms, or state any disagreement with them. In contrast, Plaintiff here states that: (1) on four different occasions between July 2007 and September 2008, he refused to sign arbitration-related forms; (2) at least four

7

times, he told his supervisors that he was refusing to agree to or be bound by Defendant's arbitration program, and that he was refusing to sign any arbitration documents; (3) he delivered two different letters to Defendant which explained why he was refusing to sign any arbitration forms and why he was refusing to be a party to, or agree to, the Arbitration Agreement; (4) he filed a charge with the EEOC, claiming that Defendant's conduct in trying to "coerce" him to enter into an arbitration agreement was illegal under the ADA; and (5) he filed multiple charges with the EEOC, alleging that Defendant's arbitration program was illegal and unconscionable. Pl's Opp'n at 8-9. Thus, the Court finds *Craig* distinguishable.

Defendant also cites to *DiGiacinto v. Ameriko-Omserv Corp.*, 59 Cal. App. 4th 629 (1997), in which the court, while not addressing arbitration agreements directly, found implied acceptance of changed compensation rules where the plaintiff continued in the defendant's employ after receiving notice of the changes. *Id.* at 635. The court reached its decision despite the fact that the plaintiff expressly refused to sign a letter from the defendant announcing the reduced rate of pay and subsequently filed a complaint for the reduced wages. *Id.* at 632. Although *DiGiacinto* is distinguishable because it does not address arbitration agreements, when taken together, Defendant appears to argue that *Craig* and *DiGiacinto* could be read to show that Plaintiff's acceptance of the Arbitration Agreement can be implied-in-fact by his continued employment, despite his express refusal of the agreement.

In response, Plaintiff directs the Court's attention to cases in which courts have required employers to obtain their employees' signatures before finding that an employee has entered into an arbitration contract. Pl.'s Opp'n at 13. In *Mitri v. Arnel Mgmt. Co.*, 157 Cal. App. 4th 1164, 1171 (2007), the plaintiffs received and signed a general employee handbook which discussed the employer's arbitration policy. Even though the plaintiffs subsequently continued to be employed by the defendant, the court found this insufficient to show mutual assent to arbitrate because the arbitration agreement provision contained in the handbook also placed the plaintiffs on notice that they would be required to sign and enter into a separate arbitration agreement with the defendant. *Id.* at 1170-72. As there was no signature from any of the employees specifically agreeing to arbitrate,

8

the court concluded that there was no arbitration agreement. *Id.* at 1173.

In *Romo v. Y-3 Holdings*, 87 Cal. App. 4th 1153, 1159-60 (2001), the court held that no agreement to arbitrate resulted from the plaintiff's signature at the end of the employee's handbook, which contained an arbitration provision. The court found that the handbook contained two separate and severable agreements: (1) the agreement to arbitrate which was the subject of one section; and (2) an agreement to be bound by the "benefits," "policies," "rules" and "procedures" contained within the remaining sections of the employee handbook. *Id.* The plaintiff did not sign the arbitration section, but did sign an acknowledgment at the end of the other sections. *Id.* The court concluded that, because the arbitration section contemplated a separate signature from the employee, the parties did not assent to that provision, and the employee therefore did not agree to binding arbitration. *Id.*

Finally, Plaintiff cites to *Nelson v. Cypress Bagdad*, 119 F.3d 756 (9th Cir. 1997). In *Nelson*, the plaintiff signed an acknowledgment that he had received a handbook and agreed to read and understand its contents. *Id.* at 758. The court concluded that the acknowledgment form did not suffice as a valid waiver of his right to a judicial forum under the ADA because nothing in that acknowledgment notified him either that the handbook contained an arbitration clause or that his acceptance of the handbook constituted a waiver of his right to a judicial forum in which to resolve claims covered by the ADA. *Id.* at 762. The court further concluded that the plaintiff's continued employment after he received the handbook did not amount to an agreement between the parties because "[a]ny bargain to waive the right to a judicial forum for civil rights claims, including those covered by the ADA, in exchange for employment or continued employment must at the least be express: the choice must be explicitly presented to the employee and the employee must explicitly agree to waive the specific right in question." *Id.*

The Court finds these cases cited by Plaintiff persuasive. As part of its mailing to employees regarding the Arbitration Agreement, Defendant included an Associate Acknowledgment Form, which required each employee to acknowledge and affirm that he had understood that the Agreement meant that both parties waived the right to a trial by jury, and that the Agreement was not optional. Kern Decl., Ex. F. The form included the following: "Please complete this acknowledgment form

9

1 and return it to your Human Resources Office." *Id.* There is no dispute that, instead of returning the
2 Acknowledgment Form, Plaintiff filed an EEOC charge of discrimination in connection with the
3 Arbitration Agreement. *Id.* ¶ 10 fn. 1. And, as discussed above, Plaintiff refused to sign the
4 Agreement and any related forms. Pl.'s Opp'n at 8-9. In evaluating Defendant's motion, the Court
5 must treat the facts as it would when ruling on a motion for summary judgment, construing all facts
6 and reasonable inferences that can be drawn from those facts in a light most favorable to Plaintiff.
7 *Chavez*, 2011 WL 4712204, at *3. With this standard as its guide, the Court finds that any reasonable
8 inference that may be made regarding Plaintiff's consent tends to show that Plaintiff did not consent
9 to the Arbitration Agreement.

10 Although Defendant argues that Plaintiff was not required to sign the Agreement and that he
11 accepted its terms by remaining employed, (Def.'s Mot. at 2-3), it provides no explanation as to why
12 it then provided its employees with the Acknowledgment Form. In fact, Defendant seems to go out
13 of its way to ensure that the Court's attention is not drawn to the form, excluding it from the list of
14 documents that it mailed to employees, (*id.* at 2), and referring to it only in a footnote in a
15 declaration, (Kern Decl. ¶ 10 fn. 1).

16 Thus, based on the case law and evidence provided by the parties, the Court finds that
17 Plaintiff did not consent to the Arbitration Agreement. Defendant's motion is therefore DENIED.

## IV. CONCLUSION

19 Based on the analysis above, the Court hereby **DENIES** Plaintiff's motion to compel
20 arbitration.

21 **IT IS SO ORDERED.**

Dated: November 8, 2011

_____
Maria-Elena James
Chief United States Magistrate Judge

10